KAMINSKI, Respondent, vs. STANDARD OIL COMPANY, Appellant. [Two cases.]

*May 11—June 6, 1939.*

For the appellant there was a brief by *Dougherty, Arnold & Kivett,* attorneys, and *Michael H. Keelan* and *Suel O. Arnold* of counsel, all of Milwaukee, and oral argument by *Mr. Keelan* and *Mr. Arnold.*

*Irving A. Lore* of Milwaukee, for the respondents.

FRITZ, J. The defendant, Standard Oil Company, appeals from separate judgments for the recovery from the defendant of $1,000 by the plaintiff, Elizabeth Kaminski,

and of $320 by her husband, Arthur Kaminski, on account of damages sustained by each as the result of personal injuries to Elizabeth Kaminski by reason of the negligence on the part of an employee of the defendant in operating one of its trucks. The injuries were sustained on September 7, 1936, while the plaintiff was walking south on the west shoulder of Highway No. 100, and the defendant's truck was being driven by one of the defendant's drivers southbound along the west lane of the thirty-feet-wide concrete roadway. The highway was straight and level for some distance to the north and south of the place of the accident. On the east side thereof there was almost no shoulder, and the tracks of an electric interurban railway were close to the east edge of the roadway. There were no pedestrians on that shoulder at the time of the accident. The shoulder on the west side of the concrete roadway was level and thirty to thirty-five feet wide, and on that shoulder at the time of the accident many trucks were parked at right angles to and within three to five feet of the concrete. They were loaded with farm produce, which was on display and being offered for sale at a fair which many persons were attending as spectators or to do shopping. They walked north and south along the three-to-five-feet-wide space on the shoulder between the parked trucks and the concrete. Elizabeth Kaminski was walking south on the shoulder with her left arm through the right arm of a friend, Eva Parsons, who was walking on the west one or one and one-half feet of the concrete when the latter was suddenly struck from the rear by a barrel rack on the right side of defendant's southbound truck. There was evidence that the force with which Eva Parsons was struck threw her against Elizabeth Kaminski and caused both of them to be hurtled into the air and thrown to the ground. Two other women were struck and thrown down also, and one of them, who was stout and heavy-set, fell on the plaintiff. The court found that defendant's driver was

guilty of causal negligence in failing to sound his horn or give warning of his approach; in the management and operation of the truck; and in failing to maintain a proper lookout. Those findings are not questioned on this appeal. In addition, the court found that Elizabeth Kaminski was "not guilty of any contributory negligence in walking on the right side of the highway, since, under the circumstances then existing, she was in the exercise of reasonable care in so doing," and that if she was "negligent in walking on the right side of the highway, such negligence in no way contributed to cause the accident and is not a proximate cause thereof." Those findings, as to the absence of any contributory or causal negligence on the part of Elizabeth Kaminski, the defendant does challenge on this appeal.

The defendant contends that Elizabeth Kaminski was negligent, as a matter of law, in co-operating with Eva Parsons in violating the safety statute which requires pedestrians to travel on the left side of a highway (sec. 85.44 (6), Stats.); and that the negligence of Eva Parsons is imputed to the plaintiff, Elizabeth Kaminski. Those contentions cannot be sustained. As the latter was walking entirely on the shoulder there was no negligence on her own part in walking there. Likewise it cannot be held that the evidence necessitated finding her guilty of contributory negligence in not maintaining a lookout to avoid injury by vehicles traveling on the concrete roadway. At the time there was but little vehicular traffic on the roadway, and there was no vehicle in either of the three lanes to cause the defendant's driver to travel as close to the west shoulder as he did. On the other hand, there existed no relationship or status between Elizabeth Kaminski and Eva Parsons, which can be held to afford any basis for imputing negligence on the part of the latter (if there was any) to Elizabeth Kaminski. The evidence does not warrant the defendant's claim that she was dependent upon or being assisted by Eva Parsons walking arm

in arm with her, or that she generally had someone along with her to help support her while walking, and that it was usual for her to walk that way. It is true that she had infantile paralysis ·when four months old, and that as a result thereof her left leg was one and one half to two inches shorter than the other, and she wore a high-heeled shoe on the left foot to correct the deformity. But, on the other hand, there is ample credible evidence that, although crippled slightly by that deformity, she was, at the time of the accident, a strong, healthy, robust woman, thirty-six years of age, who had taken care of her three children, aged fifteen, thirteen, and four, and did all the work usually done in a home of like circumstances; that she had dug a garden, driven and cranked an automobile, and assisted in excavating and digging a basement for their home;—and that she had an unusual amount of strength and energy, and did not require or depend upon any aid in walking. Likewise, there was evidence that the reason she and Eva Parsons were walking arm in arm at the time of the accident was that there was such a large crowd of people jostling and attempting to pass between them that they did not want to become separated. Under the circumstances the evidence did not require the court to find that Elizabeth Kaminski was dependent upon or was being supported or assisted by Eva Parsons in walking about or in shopping at the fair. Neither is there any other basis in the evidence for holding that negligence on the part of Eva Parsons is imputable or otherwise chargeable to Elizabeth Kaminski.

Defendant further contends that the sums of $1,000, awarded to Elizabeth Kaminski as damages for her personal injuries, and $200, awarded to her husband Arthur Kaminski on account of the loss of the society, comfort, and companionship of his wife by reason of her injuries, are excessive. The contention is based on defendant's claims that the evidence does not support finding that Elizabeth Kaminski

sustained any personal injury and does not sustain the findings as to the severity thereof. Those claims are based principally upon proof to the effect that, although Elizabeth Kaminski and Eva Parsons were taken immediately to the nearby office of Dr. Pierce, he examined only Eva Parsons; that, although on September 14, 1936, and also three weeks later R. L. Thompson, as attorney for the defendant, called at the Kaminski home in relation to Eva Parsons, who also resided there, Elizabeth Kaminski made no claim for injury until she began her action nine months later; that, when Thompson first called at the home, she told him that she had not required medical treatment, and when he called three weeks later she was dressed, and up and around the house and made no complaint of any injury; and that the original records kept by Dr. Partridge, Elizabeth Kaminski's physician, showed no charge for calls in September, 1936, excepting on the 17th and 29th, and only several calls in October and no others until she was confined and had a child in June, 1937.

On the other hand, there was ample evidence which the court could consider credible and sufficient to obviate the effect of the matters thus relied upon by the defendant. When Eva Parsons was struck and Elizabeth Kaminski was knocked and dragged down to the ground, a stout and heavyset woman fell on her. She received a scratch on her knee and the right side, the back of her dress was dirty with mud and gravel, and she also had gravel or dirt on her forehead. Immediately after the accident she felt a stiffness through her back and had a severe headache and nausea. Defendant's truck driver directed that she and Eva Parsons be taken to Dr. Pierce's office and they were helped into her husband's car. En route she had to get out of the car to vomit, and she said that she wanted to go to her family doctor. At Dr. Pierce's office the truck driver did not ask her to submit to an examination, and Dr. Pierce did not examine her. When

they reached home, she felt dizzy and nervous and lay down, but not in bed. Their family doctor, Dr. Partridge, came in a couple of hours, and found a condition of shock, soreness in the right leg, and that she complained of pain in her back and abdomen. He made two thorough and complete examinations. Objective signs on the examinations disclosed a soreness up and down the spine and down the right leg, and pain in the muscles on both sides of the abdomen. The subjective findings were insomnia, and that she had become nervous, morose, and irritable. The first night she was sleepless and had headaches, vomiting spells, and stiffness through her back; but she did not notice just how bad she was until a week later. Dr. Partridge was called two days later when she didn't stop vomiting. She next saw him in a week. He saw her eight times during September, 1936, at her home, and when she came to his office. The injury and pain in her back did not seem to improve as time went on. For the first month after the accident her pains were very sharp, and Dr. Partridge gave her infrared light treatments, and at first also electric treatments two or three times a week, when it was pretty bad. At the time of the trial she was still taking light treatments once a week from Dr. Partridge, and an infrared treatment a couple of times a day, still had a bearing-down pain on the right side in the abdomen, the sharp pain in her back and was unable to do outdoor work and housework as she used to. When Dr. Partridge last examined her on December 8, 1937, she complained of two definite points of tenderness, a joint injury to the upper part of her spine, and to the left of the middle of the spine. He found evidence of some great nervous tension, irritability, exaggerated reflexes and she would startle at the slightest noise. As time went on the pain localized at the juncture of the eleventh rib with the spine, where there was still a sharply defined point of tenderness, about as big as a silver dollar. He testified that the condition of her abdomen is also perma-

nent, and there is a permanent impairment in the use of her back. He ascribes the general pain throughout her back to torn ligaments between the lateral processes of the vertebrae—particularly the eleventh—for one thing, and traumatic synovitis of the joints between the vertebrae. Although there was, on the other hand, considerable evidence to the contrary, the nature and severity of Elizabeth Kaminski's injuries presented, under all of the proof, issues for the trial court, and if it considered the proof upon which the plaintiffs relied to be more credible, there was ample basis for the assessments of damages which were made by the court, and upon which it entered the judgments. Consequently, they must be affirmed.

*By the Court.*—Judgment affirmed in each action.