Argued October 4; affirmed October 17, 1939

# ZAHARA *v.* BRANDLI

(94 P. (2d) 718)

Department 1.

*W. C. Winslow*, of Salem, for appellant.

*Allan G. Carson*, of Salem (Carson & Carson, of Salem, on the brief), for respondent.

BEAN, J. This is an action by Gertrude Zahara, plaintiff, against G. Brandli, defendant, for the recovery of damages for personal injuries received in an automobile accident, which occurred a short distance north of the city of Salem on what is known as the Chemawa cut-off road on October 1, 1936.

The cause was tried to the court and a jury and a verdict was rendered in favor of the defendant. Plaintiff appeals.

Plaintiff, at the time, operated a fruit stand on the Pacific Highway a short distance north of where the Chemawa cut-off road leaves the highway. This road leaves the Pacific Highway about three miles north of the city of Salem, angling away from the highway to the west and north. A short distance from the place where it leaves the highway it turns sharply at right angles to the southwest. This road is not paved, but is graveled for a width of about twenty-five feet, with a shoulder covered with grass and ferns along the east side, and, as far as shown by the photographs exhibited in evidence, the west side of the road was about the same.

Plaintiff lived a short distance west and south from the right angle curve of the Chemawa cut-off road. On the evening in question, plaintiff left her fruit stand on the Pacific Highway, and cut across the point of land formed by the intersection of the Pacific Highway and the Chemawa cut-off road, a short distance south of where the accident occurred.

The photographs exhibited in evidence were taken just prior to the trial and some of the conditions shown in the pictures differ slightly from those prevailing at the time of the accident.

When plaintiff reached the Chemawa road she started north thereon on the east, or right, side of the road at about the time the defendant was returning from the city of Salem, driving an automobile. As he turned off the Pacific Highway and onto the Chemawa road, plaintiff stepped to the side of the road, variously estimated from two to four feet, and plaintiff claims she was close to the fence on the east side of the road. Defendant proceeded north on this road, driving at about the center of the same. When he reached the place close to where plaintiff was standing, another car rounded the curve, traveling toward Salem. The position occupied by plaintiff was something like seventy feet south of said turn. When this car traveling toward Salem rounded the curve defendant moved over to the right side of the road. Plaintiff contends that he swerved sharply; defendant contends that he did not. A part of his car came out on the shoulder where the plaintiff was standing and struck her and knocked her over, inflicting personal injuries upon her, bruising the hind part of her left leg and breaking her right leg near the knee.

Defendant states that he did not see the plaintiff at the time and that he did not know he had struck her, that he thought he had struck something but he did not know what it was until he heard someone scream and then he stopped.

Plaintiff charges defendant with negligence in failing to keep a lookout and in turning sharply to the

right and striking her, without giving any signal. Defendant states that he did not see the plaintiff and that he did not give any signal by sounding the horn. He admits that he struck her but says that the plaintiff was guilty of contributory negligence in that she failed to maintain any lookout, that she was using the wrong side of the highway and that she should have foreseen the danger and avoided the accident, that it was hazy and growing dark and visibility was poor, and that she was dressed in dark clothing and carried or displayed nothing to give any warning of her position on the highway.

Plaintiff states that there are some minor matters for consideration and some major questions to be disposed of, that the two major propositions presented to the court by this appeal are, first, whether the court should have withdrawn from the consideration of the jury the charge of contributory negligence set forth in the answer, namely, that plaintiff was walking on the wrong side of the road, with the traffic, rather than against it as required by statute. Plaintiff contends that this should have been withdrawn for the reason that there was no evidence in the case to show that plaintiff was so walking, that what she might have been doing some time prior to the accident should not have entered into the consideration of the jury, and that the record is uncontradicted that at the time, and for some little time before the accident, she took a position entirely beside the road and was standing still.

Margaret Zahara, the daughter-in-law of plaintiff, shortly before the time of the accident, was riding in the front seat of the car rounding the turn driven by

her husband, Mike Zahara. Her testimony was in part as follows:

"Q. And as you rounded this curve did you see your mother-in-law, Mrs. Gertrude Zahara, plaintiff in this case?
A. Yes, I saw her.
Q. Where was she at that time?
A. She was walking up the side of the road.
* * * * *
Q. Please correct me if I misunderstood you, Mrs. Zahara. When you came around the curve, you saw Mrs. Zahara and she was walking along the side of the road?
A. Yes, as I remember it she was walking. I saw her before I saw the car.
Q. She was walking north on the side of the road, she wasn't by the fence then, was she?
A. No, she stepped back."

■ The first assignment of error is that the plaintiff says there is manifest error upon the record in this: The court erred when admitting the testimony and permitting the cross-examination of plaintiff, as shown by Exception No. 1 of the Bill of Exceptions. It appears that the deposition of plaintiff was taken before the trial and upon the trial the following question was asked her in regard to the deposition:

"Q. If the court reporter has you saying the weather was nice, she was mistaken?
A. I know it wasn't raining, but I don't know."

An objection by plaintiff was overruled and plaintiff reserved an exception. The examination continued:

"Q. If the court reporter has you in this deposition saying that the weather was nice, this deposition taken last Tuesday, the court reporter was mistaken, is that correct?
A. Well, I didn't mean nice, it wasn't raining."

There was no prejudicial error in the ruling of the court in regard to the cross-examination. It was not an important matter.

■ Error is assigned in the admission of testimony of Mrs. Bertha Brandli, wife of defendant. When she was on the witness stand and during the direct examination, the following proceedings were had:

"Q. What happened then?

Mr. Winslow: Objected to as irrelevant and immaterial.

The Court: What do you claim for that?

Mr. Carson: He testified about going there, this man Hoblitt, and about the statement. I asked him about coming back later.

Mr. Winslow: That wouldn't make this admissible.

The Court: I can't understand how you claim this is admissible.

Mr. Carson: I asked if he came back later and what his attitude was, if I remember correctly, it shows his interest.

The Court: That is the man from Silverton?

Mr. Carson: Yes, sir.

The Court: For the purpose of showing his interest, for that purpose, I think she may answer.

Mr. Winslow: Allow us an exception.

The Court: The law gives you that.

Q. (By Mr. Carson) What was his attitude, how did Mr. Hoblitt act when he came back about nine o'clock?

A. He wanted to talk to my husband so he would sign that statement.

Q. How did he act, was he nice to you?

A. Well, he wasn't very nice.

The Court: Let her describe how he acted, what did he do?

Q. How did he act toward you?

Mr. Winslow: I don't think that shows the interest of a witness, his attention wasn't called to anything like that, and he isn't here to rebut it.

The Court: She may answer. Let the objection be overruled.

A. Well, shall I go ahead?

Q. How did he act? Was he nice to you?

A. No, he wasn't very nice."

It is not shown what Mr. Hoblitt did or said to Mrs. Brandli. No error of the court appears of record in regard to this minor matter.

■ Assignment of error No. 3 is that the court erred in not instructing the jury as requested by plaintiff, as shown by Exception No. 5 of the Bill of Exceptions, as follows:

"The defendant in his answer charges the plaintiff with contributory negligence in that she walked on the right-hand side of the highway.

"You are instructed that there is no evidence that at the time of the accident plaintiff was walking on the right-hand side of the highway. Therefore, these charges contained in the defendant's answer are withdrawn from your consideration. The mere fact that plaintiff may have been walking on the right-hand side of the highway a short time before the accident would not render her guilty of negligence if she was not so walking at the time of the accident."

This is presented as one of the major questions involved in this appeal. We have already quoted the testimony of Mrs. Margaret Zahara to the effect that just before the plaintiff was struck she was walking on the right side of the highway. The plaintiff herself states:

"A. I just went through Powers' yard and kept on walking, when I got a little way I heard a car traveling on the gravel, naturally I looked around, and at that time the car was coming and I thought I better get on the side and I went on the side next to the fence there.

Q. How far off the main traveled portion of the highway would that put you?

A. Well, I can't say, maybe five or six feet, I don't know, I have no ideas about that, but I stood close to the fence and I thought I will stay there until the car is by and then I will walk again.

Q. Then what happened?

A. Well so Mr. Brandli's car—I don't know who it was—just dabbed right into me and catched this leg out and kind of—''

On cross-examination she tells again of her position and how she was facing the road and keeping her eye on the car, and describes her position as close to the fence. The defendant plainly testified that the wheels of his car were at all times on the graveled highway, that his fender extended to the right into the weeds and ferns and struck Mrs. Zahara.

The language of the statute, section 55-2318, Oregon Code Supplement, 1935, is as follows:

''Pedestrians, when using any highway outside of incorporated cities or towns, shall use the left-hand side of such highway, so as to leave the right-hand side of the highway free for vehicles passing in the same direction and for safety in meeting vehicles proceeding in the opposite direction.''

It will be noted that the statute reads: ''Pedestrians, when *using* any highway * * *.'' (Italics ours.) This language seems to cover the case at hand, and the plaintiff, whether she was walking or standing, was using the highway and admittedly she was on the wrong side of such highway. We think there was no error in the court's refusal to instruct the jury, as requested.

■ Plaintiff assigns that the court erred in instructing the jury, as shown by Exception No. 6, plaintiff's Bill of Exceptions, as follows:

"It is the law of Oregon, and it was the law of Oregon at the time of the accident in question, that pedestrians, when using any highway outside of incorporated cities or towns, shall use the left-hand side of such highway, so as to leave the right-hand side of the highway free for vehicles passing in the same direction and for safety in meeting vehicles proceeding in the opposite direction. In this case the defendant charges that plaintiff was a pedestrian using a highway outside of any incorporated city or town, and that she did not use the left-hand side of such highway in so doing. Now the plaintiff denies this,—this contention that she was a pedestrian using the highway outside of an incorporated city or town. If you find from a preponderance of the evidence that at the time of the accident plaintiff was a pedestrian using a highway outside of an incorporated city or town,—and it is admitted this highway is outside any city or town,—and that she did not use the left-hand side of the highway in so doing, then the plaintiff would be guilty of negligence in and of itself. If you find from a preponderance of the evidence that plaintiff was negligent in that respect and that such negligence proximately caused or contributed in causing the collision in question, she cannot recover and your verdict in that event must be for the defendant."

It should be carefully noticed that the court charged that if the jury found from the preponderance of the evidence that plaintiff was negligent in respect to walking on the left, or wrong, side of the road and that such negligence proximately caused or contributed in causing the collision in question, she could not recover. It is apparent from the record and the testimony, a portion of which has been quoted, that the jury might well believe that if plaintiff had been on the left side

of the road, in conformity with the statute, she would not have been hurt, and that her negligence in walking on the right side of the road, in violation of the statute, proximately caused or contributed in causing the collision. From the photographs exhibited and from the testimony, there is nothing to indicate but that plaintiff could have been on the left side of the highway in accordance with the statute and not have been injured.

Plaintiff cites *Antoine v. Louisiana Highway Commission,* (La.) 188 So. 443, 445. In that case the plaintiff was walking on the right-hand shoulder of the road, whereas the law then in effect required pedestrians who used the highway to walk on their left-hand side of the highway, as near as possible to the edge thereof. Defendant ran a truck off the paved portion of the highway onto the shoulder, failed to slow down or give a warning signal with his horn, or other device for signaling, and struck the plaintiff. Plaintiff was allowed to recover because of the fact that his walking on a portion of the highway where vehicles were not presumed to travel, even though he was on his right instead of his left side, could not have been the proximate cause of the accident. In the case at bar the court plainly instructed the jury that if they found from a preponderance of the evidence that plaintiff was negligent in respect to walking on the right side of the highway and that such negligence proximately caused or contributed in causing the collision in question, their verdict in that event must be for the defendant. In that respect the present case differs from the one cited.

In *Summers v. Dominguez,* 29 Cal. App. 308, 84 P. (2d) 237, also relied upon by plaintiff, the syllabus reads:

''Under statute defining 'roadway' as improved portion of highway designed or ordinarily used for

vehicular travel, dirt shoulder was not, as a matter of law, an integral part of 'roadway,' and, therefore plaintiff was not contributorily negligent, as a matter of law, in walking upon dirt shoulder to right of concrete slab prior to being struck by truck, notwithstanding statute requiring pedestrians walking upon 'roadway' to walk at left-hand edge thereof.''

It is clear that the statute of California differs from that of Oregon.

In *Kaminski v. Standard Oil Company*, (Wis.) 286 N. W. 327, also cited by plaintiff, the plaintiff recovered $1,000. Plaintiff was injured while walking south on the west shoulder of the highway. Defendant's truck was being driven by one of defendant's drivers southbound along the west lane of a concrete roadway thirty feet wide. The highway was straight and level for some distance to the north and south of the place of the accident. The shoulder on the west side of the concrete roadway was level and from thirty to thirty-five feet wide. People attending the fair walked north and south along the shoulder, a space three to five feet wide on the shoulder between parked trucks and the concrete. Elizabeth Kaminski was walking south on the shoulder with her left arm through the right arm of a friend, who was walking on the west one or one-half feet of the concrete, when the latter was suddenly struck from the rear by a barrel rack on the right side of defendant's southbound truck. There was evidence that the force with which the friend was struck threw her against Elizabeth Kaminski and caused both of them to be hurtled into the air and thrown to the ground. Two other women were struck and thrown down also, and one of them who was stout and heavy-set, fell on plaintiff. The court found that defendant's driver

was guilty of causal negligence in failing to sound his horn or give warning of his approach; in the manner and operation of the truck, and in failing to maintain a proper lookout. In addition, the court found that Elizabeth Kaminski was not guilty of contributory negligence in walking on the right side of the highway since under the circumstances then existing she was in the exercise of reasonable care in so doing, and that if she was negligent in walking on the right side of the highway, such negligence in no way contributed to cause the accident and was not a proximate cause thereof. The facts of that case differ from those in the instant case.

As we read the cases of *Weinstein v. Wheeler,* 135 Or. 518, 295 P. 1096, and *Hartley v. Berg,* 145 Or. 44, 25 P. (2d) 932, they are not in conflict with the instruction given by the trial court.

■ The plaintiff predicates error upon the instruction of the court that "The defendant had a right under the laws of Oregon to use the travelable or traversable part of his right-hand of the highway to its full extent, and including the shoulder thereof to its full width." Defendant testified that the wheels of his car were at all times upon the macadamized or improved part of the highway and that his fender extended out into the weeds on the shoulder. We think the defendant drove his car where he had a right to, and that that was the intent of the instruction. There was no error of the court in so charging the jury.

■ The jury no doubt considered the condition that plaintiff was in when she was partially submerged in the weeds or ferns, dressed in dark clothing, which did

not attract the attention of the driver of the automobile. It seems to us that the statute requiring pedestrians to use the left-hand side of the highway is mandatory and that it is a proper question for regulation by the legislature. We think it is a legislative question and we doubt if the legislature, in its wisdom, would see fit to change it. We may as well do away with any other rules of the road as this one. The instruction of the court was in conformity to the statute. No doubt many motorists drive their cars on the left side of the road when there is no other car in the way and nothing to prevent them from so doing. This does not change the rule in regard to pedestrians traveling on the left side of the highway. A motorist driving a car upon the left side of a road, where the view is unobstructed for some distance, on seeing a car coming in the opposite direction can quickly change to the right. Not so with pedestrians walking on the right side of the highway. Their path is prescribed by statute and they ought to follow it for their own safety. See *Scalf v. Eicher,* 11 Cal. App. (2d) 44, 53 P. (2d) 368, 369. The decisions in other states construing statutes on this subject are not entirely in harmony and some of the statutes in other states are not exactly like the Oregon statute.

■ The relative rights as to the use of the east shoulder of the roadway by the respective parties was in issue in the case. The instruction does not deserve the charge of being abstract.

■ Error is predicated on the following instruction given by the court to the jury:

"There is another principle of law which you may take into consideration in this case and that is, under the laws of Oregon it was defendant's duty at the time and place here in question, to drive not only upon the

right half of the highway but also as closely as practicable to the right-hand edge of the highway and to pass to the right of any vehicle proceeding in the opposite direction, giving to such other vehicle at least one-half of the main traveled portion of the roadway as nearly as possible; that would establish the duty of the defendant in passing the automobile which was approaching him and that would be his right in traveling upon the highway.''

Plaintiff suggests that this instruction is abstract and not applicable. Defendant at the time, as shown by the testimony, saw a car coming in the opposite direction and it was his duty to drive to the right side of the roadway as closely as practicable and give at least one-half of the main traveled portion of the road, as nearly as possible, to avoid colliding with the car that was coming south on the highway, and the fact that the car came around the turn, traveling south, and stopped before it reached the place where the accident occurred, did not change the situation. He would not be expected to wait until the car got where he was before he drove to the right side of the road.

We sympathize with the plaintiff and regret that she was injured. It is for the legislature to enact the law and for the court to interpret it and for the jury to pass upon the facts. We think the plaintiff had a fair and impartial trial. We find no error in the record.

Therefore the judgment of the circuit court is affirmed.

RAND, C. J., and KELLY and LUSK, JJ., concur.