Argued December 8, 1948; reargued February 9;
affirmed February 23, 1949

OJA *v.* LeBLANC
203 P. (2d) 267

*William E. Dougherty and William H. Morrison* argued the cause for appellant. On the brief were Maguire, Shields, Morrison & Bailey, and William E. Dougherty and Howard K. Beebe, of Portland.

*Robert C. Anderson* argued the cause for respondent. On the brief were Anderson, Sloan & Anderson, of Astoria.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, KELLY and BAILEY, Justices.

BRAND, J.

The complaint alleges that the accident occurred in Clatsop County, Oregon, upon Highway 101 at a point thereon where said highway runs in an easterly and westerly direction between Miles Crossing and the Lewis and Clark bridge, and at a point where "G" street runs into or intersects said highway. The complaint alleges:

> "That at approximately the hour of 10:00 o'clock P. M. on December 15, 1946, plaintiff was standing off the paved portion of said highway upon the northerly graveled shoulder thereof, and at a point where said "G" street runs into or intersects said highway.
>
> "That at said time and place, defendant was operating his automobile in a westerly direction upon said highway, and did so operate said automobile in such a careless and negligent manner that he caused same to run into and upon the plaintiff with such force and violence that plaintiff was knocked to the ground and was caused to suffer permanent bodily injuries * * *"

It is alleged that defendant was negligent in the following respects: Failure to keep a lookout; failure

to keep the car under proper control; excessive speed; inadequate lights; failure to sound horn; and

"That he operated his automobile away and off from the paved portion thereof and unto the northerly shoulder thereof without first observing whether there was or might be pedestrians using said shoulder."

The answer denied all allegations of negligence and affirmatively alleged:

"That on or about the 15th day of December, 1946, defendant was driving his automobile in a westerly direction on highway No. 101, and when defendant reached a point on said highway near the area known as Riverwood Park defendant's automobile collided with plaintiff, who was then and there walking on said highway, and as a result plaintiff sustained certain injuries.

"That at the time and place of said accident plaintiff was careless, reckless and negligent in failing to keep a proper lookout; in failing to yield the right of way to defendant's automobile; in walking immediately in front of defendant's automobile; in walking on said highway while being in an intoxicated condition."

It was further alleged that the alleged negligent acts of plaintiff contributed to and proximately caused his injuries. There was a judgment for the plaintiff in the sum of $9,025.00 and costs.

Upon this appeal the defendant relies upon two assignments of error. As his first he asserts that:

"The court erred in overruling defendant's motion for a judgment of involuntary non-suit against the plaintiff, for the reason that plaintiff failed to prove a cause sufficient to be submitted to the jury."

We will first consider the evidence concerning the

circumstances and events immediately preceding the accident.

Girrard's store is located on the north side of the highway and about 240 feet west of the scene of the accident. At about ten o'clock in the evening the plaintiff went into the store and drank a cup of coffee, remaining there "probably ten minutes or more, about enough time to drink that coffee * * *"; he then left the store and walked, "first towards Astoria" in an easterly direction. When so walking he was upon his own left-hand side of the highway and would be facing any oncoming traffic. The pavement is twenty-four feet five inches in width, with a yellow line down the center. There is a rock or gravel shoulder along the northerly edge of the pavement, which at the point of impact was smooth, level with the pavement, and about seven and one-half feet in width. We now quote the plaintiff's testimony covering events from the time he left Girrard's store until he was struck by defendant's car:

"A I was walking along the road side waiting for the busses.

"Q Which direction did you walk?

"A I walked first towards Astoria.

"Q And state whether or not you were walking on the pavement.

"A No.

"Q Upon what did you walk?

"A On the gravel.

"Q Is that gravel what is known as the shoulder?

"A Yes, that is called the shoulder.

"Q Approximately how close were you to the pavement when you walked towards Astoria.

"A About a foot or two or little more sometimes.

"Q State whether or not when he was walking down whether he saw any cars approaching.

"A From Astoria direction?

"Q Yes.

"A I saw the lights quite a distance away.

"Q And how far did you walk then from the store.

"A Some fifty or sixty feet or thereabouts.

"Q Now state whether or not any time when you walked down you were on the paved part of the highway.

"A No, as the shoulder was quite level with the pavement I was close to the pavement sometimes.

"Q Now how do you know you were on the pavement or on the gravel?

"A I could feel the gravel under my feet and I also saw the pavement.

"Q What did you do after you had walked this fifty or sixty feet?

"A I stood there for a while and then I turned, turned back and looked to the other direction; I started to walk back again.

"Q That is towards Seaside way?

"A Oh I didn't start; I was standing on that spot.

" * * *

"Q Now I believe you stated you were standing; to the best of your recollection how close were you to the highway at that time.

"A To my recollection I was about a foot or two, I, I can't remember that I, I could have been on the pavement but I don't recall how close I was exactly but to the best of my ability I thought I was standing on that shoulder.

"Q Now before you testified you looked toward Seaside; had you looked towards Miles Crossing?

"A Yes.

"Q And did you see the lights of any car approaching?

"A Yes.

"Q To the best of your ability, how far were the lights away from you?

"A Oh about two, two blocks or thereabouts or maybe a little shorter distance away.

"Q State as to the intensity of the lights of the car.

"A They were rather dim, dim enough for me to notice it wasn't a bus. (Interpreter: He calls it a stage but I am using the word 'bus'; is that all right?)

"Q Yes; he stated they were dim enough—

"A They were dim enough for me to realize it couldn't be a bus; it wasn't a bus that was coming.

"Q I see; after you turned to look toward Seaside way, what happened after that?

"A As I was looking toward Seaside I was hit by, by that car."

As a result of the accident plaintiff was rendered immediately unconscious and was seriously injured. The foregoing testimony was elicited upon direct examination and there was no cross-examination concerning the plaintiff's position at the time he was struck. The only witnesses who testified concerning the actual occurrence were the plaintiff, the defendant and the defendant's wife.

The defendant never saw the plaintiff at any time until after the accident. His wife only saw an object at the moment of impact. The defendant, a Navy lieutenant, was returning from the movies with his wife, two daughters and mother-in-law in the car. The defendant testified that he was driving from thirty to thirty-five miles an hour on the paved portion of the

highway; that plaintiff was hit by the center of the right front fender; that on discovering that he had struck a person, he stopped immediately on the paved portion of the highway and caused an ambulance and the state highway patrol to be called. The defendant's wife also testified that the car was on the pavement at all times. The investigating officer who arrived shortly after the accident testified that the plaintiff was lying on his stomach, his head at the north edge of Highway 101, and his body at right-angles to the pavement. The context shows that the officer meant "pavement" when he said "highway".

At the close of plaintiff's case the defendant moved for a nonsuit as follows:

"Mr. Morrison: The Court please, at this time the defendant moves for a judgment of involuntary non-suit on the ground and for the reason that the evidence does not state a cause of action and that there is no evidence or [of] negligence which would be a proximate cause of the accident. The evidence of the plaintiff leaves the jury entirely in the realm of speculation. The plaintiff which — the complaint which the plaintiff is bound by, states that he was standing off the paved portion of the highway and the driver of this car ran off the highway and struck him. Therefore, if he was standing on the highway, he would be guilty of contributory negligence as a matter of law, and I move that as one of the grounds for judgment of involuntary non-suit on the ground that the evidence shows he was either guilty of contributory negligence as a matter of law or leaving the matter entirely in the realm of speculation because the witness testified he was standing at the time of the accident and he doesn't know whether he was standing on the pavement or off the pavement; I will ask the court reporter to read the statement the witness gave there."

The questions which are urged upon us are first, whether there was substantial evidence of negligence on the part of defendant, and second, whether the plaintiff's own case showed that he was guilty of contributory negligence as a matter of law.

■ The theory of the defendant as disclosed by his motion for nonsuit appears to have been that the dividing line between liability and nonliability was the edge of the pavement. Defendant contends that if plaintiff was on the pavement he was guilty of negligence as a matter of law. The motion does not present any contention that plaintiff might also be guilty of contributory negligence by standing on the shoulder within a foot or two of the pavement, dressed in dark clothes, at ten o'clock P. M., with his back to a car which he knew was approaching from his rear, on his, and its side of the highway. Since no such contention was presented to the trial court, we are not required to consider it here. *Caldwell Banking & T. Co. v. Porter,* 52 Or. 318, 95 P. 1, 97 P. 541; *Hunt v. Ring,* 125 Or. 111, 265 P. 1094; *Mollencop v. City of Salem,* 139 Or. 137, 8 P. (2d) 783. If the plaintiff was standing on the shoulder when hit, that fact would present a question for the jury upon the issue of the negligence of the defendant. It is true that the driver of a motor vehicle may use his right-hand side of the highway to its full extent, including the shoulder "to its full extent". *Zahara v. Brandli,* 162 Or. 666, 678, 94 P. (2d) 718. But, such right is of course, subject to the duty to exercise due care and to maintain reasonable control of the vehicle and a reasonable lookout for pedestrians. A finding by the jury that the plaintiff was on the shoulder would not only raise an issue of negligence by the defendant but would also negative

the only issue of contributory negligence which was presented in the motion for nonsuit. In view of the particular manner in which the case was presented, the issue was narrowed down to the single question, whether there is evidence in the record from which the jury could have found that the plaintiff was on the shoulder when hit.

■■ We are not to be taken as approving the theory by which the issues were narrowed to a single question with liability dependent on whether the plaintiff was on one or the other side of the edge of the pavement, but we believe that was the theory of the parties at the time of the motion for nonsuit, and this belief is confirmed by the fact that counsel have advised us that at the close of the case it was agreed that the verdict should depend on that issue. Pursuant thereto, the court instructed the jury: "if the collision occurred off the highway, the defendant was liable. If it occurred on the highway, he was not liable." No exception was taken to this instruction by either party and neither can now complain, although it excluded from the consideration of the jury issues concerning lookout and control which should normally have been submitted. In view of these instructions, the verdict for plaintiff was the equivalent of a specific finding that the plaintiff was on the shoulder at the time he was struck. If there was substantial evidence upon that single issue, the motion for nonsuit was properly denied.

■ The decision is not an easy one. The court has studied the transcript, the briefs, the original argument, and a reargument before the court in banc. The conclusion has been reached that there was evidence for the jury. It must be remembered that the plain-

tiff, by reason of his inability to speak intelligible English, testified through an interpreter. His testimony is clear that as he walked toward Astoria he saw the pavement and felt the gravel under his feet, and in answer to the question whether "any time when you walked down you were on the paved part of the highway", he answered "no". After he stopped and turned around, the jury may also have construed his statement, "I don't recall how close I was exactly", as an assertion that he was not on the pavement and that his uncertainty was only as to his distance therefrom. True, he said he could have been on the pavement, but he also said that he was a foot or two from it, and "to the best of my ability I thought I was standing on that shoulder,"

The jury may also have inferred that the defendant and his wife would more probably have seen plaintiff if he had been on the pavement and thus in the direct range of the defendant's lights as the car approached, and that since neither of them saw him before the collision they may have thought it more likely that plaintiff was struck by some sudden inadvertent swerve at the moment of impact. In view of the issue presented to the court, the motion for nonsuit was properly denied.

The second and last assignment of error relates to the following instruction which was given by the court:

"Now you will also recall that there was some discussion by the witnesses and by counsel in regard to the presence of a sign on the highway. I instruct you that a sign on the highway warning drivers of the possibility of pedestrians ahead, creates no greater legal right or privilege for a pedestrian than he otherwise would have had, and in regard to this evidence which has been presented

to you as to the presence and location of a sign warning drivers to look out for pedestrians, I instruct you that this sign was placed there as a caution to drivers. Such a caution, together with the number of dwellings along the road and all the other circumstances, are to be considered by you — all the circumstances together — in determining the amount of care that the defendant should have used in operating his car at that time and place. His duty was to use such care and caution as a man of reasonable and ordinary prudence would use under all of the circumstances, and that sign is just one of those circumstances which you are to consider in that connection."

The sign in question was of the standard type on state highways and read "Look Out For Pedestrians Ahead". Exception was taken to the instruction on the ground that it was abstract; that it was an instruction on evidence; and that it was "contrary to the other series of instructions given by the court where the court limited the issues to whether or not the plaintiff was on or off the highway at the time of the accident." The effect of the instruction was to limit rather than to emphasize the highway sign and to caution the jury to consider it merely as one of the sum total of circumstances to be considered in determining the issue of reasonable care. The defendant relies upon the rule stated in *Hanson v. Schrick,* 160 Or. 397, 403, 85 P. (2d) 355, to the effect that it is error for the trial court to select a single part of the evidence and to instruct the jury as to its probative value. In that case the court gave the following instruction:

"I instruct you that the evidence of the smell of liquor on the breath or of having been drinking intoxicating liquor is not sufficient, standing alone, to prove intoxication or that one is under the influence of intoxicating liquor."

The evidence was conflicting as to whether plaintiff's conduct was due to intoxication or to shock. The specific evidence suggestive of intoxication was the testimony of a witness who had smelled beer on plaintiff's breath. Referring to the instruction given, the court said, (three justices dissenting) that it was reversible error "for the court thus to invade the province of the jury in determining the effect and value of the evidence * * *".

In view of the provisions of O. C. L. A., § 5-308, as at present construed, it is clear that the trial court should not select a single part of the evidence and instruct the jury as to its probative value. To do so would be to "comment on the evidence". Such was the case in *Dunn v. First National Bank of Portland,* 149 Or. 97, 39 P. (2d) 944, cited by this court in support of the rule in *Hanson v. Schrick.* One of the questions of fact in the case was whether a step was within plain view of any person leaving the bank through a revolving door. The court instructed the jury that the step was "in a perfectly obvious place to the view of all persons". The instruction was an improper comment on the evidence. Again in *Service v. Sumpter Valley Ry. Co.,* 88 Or. 554, 171 P. 202, the court said:

> "Moreover, all the instructions referred to in assignments three, four and five are subject to the criticism that they sought to advise the jury of the effect of certain acts which, because of the nature of the controversy, were prominent when there was other evidence in the case which properly could be considered in the same relation. The court cannot select any particular piece of testimony and charge the jury wholly upon that when there are other circumstances proper for its consideration".

It was held that the refusal to give such instructions was proper. In that case there was much evidence

which was relative to a single issue. The instruction if given would have advised the jury of the effect of a portion only of that evidence, giving to it undue emphasis. The situation in that case is the exact opposite of that in the case at bar. In the instant case it was the parties and not the court who had "singled out" the matter of the sign by argument and requested instructions. The court merely advised the jury to consider it along with all of the other relevant evidence. The instruction given in *Hanson v. Schrick*, supra, did not, in our opinion, when considered alone, constitute reversible error. It did not single out for undue emphasis one portion of the evidence. On the contrary, it stated a rule of law to the effect that evidence of the smell of liquor on the breath or of having been drinking intoxicating liquor is not alone sufficient to prove intoxication. Such, we think, is the law. *State v. Noble*, 119 Or. 674, 250 P. 833; *Critzer v. Donovan*, 289 Pa. 381, 137 At. 665; *State v. Hainbuch*, 74 Ohio App. 193, 57 N. E. (2d) 940; *People v. Fox*, 256 App. Div. 578, 10 N. Y. S. (2d) 694; *Stewart v. State*, 49 Ga. App. 332, 175 S. E. 485.

 We cannot in these modern times adhere to a rule of thumb that the mere mention in an instruction of specific facts which are in evidence constitutes reversible error, especially when the purpose of the instruction is to prevent the very "singling out" which the rule condemns. It must always be remembered, as said in *Nordlund v. Lewis & Clark Ry. Co.*, 141 Or. 83, 15 P. (2d) 980, cited with approval in *Kiddle v. Schnitzer*, 167 Or. 316, 114 P. (2d) 109, 117 P. (2d) 983:

" 'The judge who presides over the trial and sees the manner in which the issues develop, whether they are mentioned in the pleadings or not, is best able to know what instructions are needed by the

jury to produce a verdict in harmony with the law, and thus much must be left to his direction.' "

■ We adhere to the rule stated in *Hanson v. Schrick,* supra, that the court should not single out evidence and instruct as to its probative value. But it is with the application of the rule that we are concerned. Neither the instruction given in *Hanson v. Schrick* nor that given in this case comes within the prohibition of the rule, properly construed. The court did not, within the meaning of the rule instruct as to the probative value of the evidence concerning the sign. Under the circumstances, it was in accordance with common practice for the court to explain that the sign was to be considered merely as one of the facts and not as the basis for a special rule of law. Had the case been tried upon the issues made by the pleadings involving the general duty of due care, control and lookout, and the issues concerning contributory negligence, the giving of the instruction in question would have been unobjectionable. See *Godvig v. Lopez,* decided February 15, 1949, where the matter of abstract instructions is fully discussed.

The defendant criticizes the instruction upon another ground which requires consideration. He contends that the giving of the instruction on the highway sign was "contrary to the other series of instructions * * * where the court limited the issues to whether or not the plaintiff was on or off the highway at the time of the accident." There is an element of truth in this assignment. The difficulty arises from the fact that before the giving of instructions the parties and the court deviated from the issue of negligence and contributory negligence made by the pleadings and contented themselves with the simplified issue, "whether

or not the plaintiff was on or off the highway''. On that issue, to be sure, the matter of the sign became irrelevant as did many other issues made by the pleadings. But let us see how this situation arose. We suspect, though it is only a suspicion, that both parties prepared and requested instructions along the traditional lines prior to the time when, as we have been assured in open court, it was agreed that the case should be submitted to the jury upon the single issue of the situs of the accident. The plaintiff requested instructions concerning the highway sign and asked the court to tell the jury that it would be ''unlawful for the driver of any vehicle to disobey the instructions of any official traffic sign * * *''. The defendant also requested the following instructions concerning the effect of the highway sign:

"XXVIII

"I instruct you that the sign on the highway warning drivers of vehicles of the possibility of pedestrians ahead imposes no greater duty upon the driver of a vehicle that [than] would have been upon him if there had been no such sign.

"XXIX

"I instruct you that the sign on the highway warning drivers of the possibility of pedestrians ahead creates no greater legal right or privilege for a pedestrian than he otherwise would have had."

 It will be observed that the court incorporated defendant's 29th request as a part of the very instruction to which defendant excepts. The final instruction which incorporated what appears to have been the adopted theory of the parties was given after the jury had retired. They were recalled and the court instructed in part as follows:

"* * * The instruction I intended to give you and which I want to now give you in place of what-

ever may have been given, is that if the plaintiff was standing off the highway on the shoulder, not on the paved portion of the highway, then it was the duty of the defendant to look out for his welfare before he made any swerve off the pavement. That is the basis upon which the instruction was given to you; that if the collision occurred off the highway, the defendant was liable. If it occurred on the highway, he was not liable. * * *''

The instruction concerning the highway sign was no more inconsistent with the final instruction which was given ''* * * in place of whatever may have been given * * *'' than a number of other instructions which were given prior to the original retirement of the jury. Both plaintiff and defendant requested instructions relative to the issues as set forth in the complaint and answer, and, prior to the original retirement of the jury, the court gave several instructions relative to the specific issues made by the pleadings. No exception was taken by either party to the complete shifting of the issues which was caused by the final instruction to the recalled jury, and the only exception taken by the defendant, which is based on the inconsistency of the earlier instructions when compared with the final one, relates to the instruction on the highway sign. Both parties invited an instruction on that subject and they thereby waived the inconsistency. Any objection to the giving of the remaining inconsistent instructions was waived by a failure of the defendant to except. Since the only serious criticism of the instructions concerning the highway sign is based on its inconsistency with the final instruction of the court, and since an instruction on that subject was invited, we hold that the defendant cannot now complain.

Judgment of the circuit court is affirmed.